UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                     Case No. 07-11700

DARRYL R. MILLER, RUTH A.                        HONORABLE AVERN COHN
MILLER, and CITY OF OAK PARK
ASSESSOR,

    Defendants.

_____/

## MEMORANDUM AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This is a federal tax case. Plaintiff, the United States of America ("the government"), is suing Defendant Darryl R. Miller ("Miller")[1] to collect unpaid federal income taxes for years 1984 through 1989, 1996, 2003, and 2005, to enforce its liens on real property located at 22000 Stratford, Oak Park, Michigan ("Oak Park property") and foreclose.[2] Miller raises several challenges to the government's action, including disputing that he owns the Oak Pak property.

---

[1] Miller, a former attorney, is proceeding pro se.

[2] The government has also named Ruth R. Miller ("Ruth Miller") and the City of Oak Park Assessor ("assessor") as defendants. At the hearing on the government's motion, the assessor indicated it had no objection to the motion. By order filed this date, Ruth Miller has thirty days to respond to the complaint.

Before the Court is the government's motion for summary judgment. For the reasons that follow, the motion will be granted.

## II. Background

### A. Miller's Tax Liability and the IRS Tax Liens

Miller owes the government unpaid federal income taxes. Beginning in 1996, the Internal Revenue Service ("IRS") assessed Miller's tax liability for years 1984 through 1989, and 1996, and sent notice of each assessment and demand for payment to Miller. Miller did not pay. In 2000, Miller made an offer in compromise for each of the years. The IRS rejected the offer. Later, the IRS assessed Miller's 2003 and 2005 income taxes and again sent Miller a notice of assessment and payment demand. Again, Miller did not pay. Miller's assessed liability, as of February 24, 2009, was $235,332.72, and he continues to incur interest charges and penalties.

During the years 1999 through 2007, the IRS recorded and sent notice of tax liens to Miller for unpaid tax years 1986, 1987, 1988, 1989, 1996, and 2003. The 1996 tax lien was later extinguished and not reinstated, and a 2005 tax lien was never recorded. The other tax liens remain in effect.

### B. Miller's Oak Park Property Interest

#### 1. The Land Contract

In 1987, Miller entered into a land contract with Franklin Fox ("Fox") to purchase the Oak Park property. Approximately one year later, Miller moved into the property and has resided there ever since except for periodic absences. Until 1995, Miller made on-time payments on the land contract. During and after 1995, however, Miller stopped making payments. Miller and Fox litigated Miller's nonpayment. A Judgment of

Possession After Land Contract Forfeiture was issued on August 17, 1999, stating that the land contract had been forfeited, Fox had a right to possession, and Miller owed Fox a court determined amount of $31,550.59.  It further stated that Miller had until November 17, 1999 to cure the land contract breach.  Miller did not meet the deadline.

Eventually, Miller and Fox reached a settlement agreement related to the land contract: Miller was to pay Fox $22,000 – "the full, complete, Land Contract payoff."  In exchange, Fox was to convey the Oak Park property to him and give Miller a warranty deed.

On October 5, 2000, Fox and Miller signed a Closing Statement on the Oak Park property:  $22,000.00 was the property sale price and $15,000.00 was the stated cash amount due to seller.  Handwritten notes appear on the Closing Statement which indicate that deeds were to be issued to both Miller and Ruth Miller, Miller's mother.  Specifically, the note reads "Deed [sic] were issued to Ruth Miller + another to Mr. Miller - only 1 will be recorded by Mr. Miller."  The Closing Statement also shows that Miller paid $7000.00 to Fox prior to closing.

On October 6, 2000, Fox issued a warranty deed for the Oak Park Property to Ruth Miller for consideration in the amount of $37,500.00.  Miller's name is not on the deed.  However, a handwritten note appears at the top of the deed which states that two deeds were issued, one to Ruth Miller and to Miller and that Miller was to record one deed.  To date, no deed, to either Miller or Ruth Miller, has been recorded on the Oak Park property.

On October 11, 2000, a bank check was issued to Miller in the amount of $15,000.00.  A handwritten note appears on a copy of the check to the effect that it was

given to Fox.

On March 1, 2001, the Oak Park property was forfeited to the Oakland County Treasurer for nonpayment of property taxes, under the name D. Richard Miller.

On March 6, 2002, Miller paid $4,397.52 to redeem the Oak Park property.

Miller, "at times" has paid "some of the utilities" for the Oak Park property. Miller pays the property taxes, often with help from family and friends. He does not rent or lease the Oak Park property.

### C.  The Instant Action

The government's Amended Complaint contains three counts, as follows:

Count I - seeking a judgment against Miller's for unpaid taxes in the amount of $235,332.72,[3] plus interest and statutory additions accruing from and after February 24, 2009, under 26 U.S.C. §§ 7401 and 7403;

Count II - seeking enforcement of tax liens against the Oak Park property interest, under 26 U.S.C. §§ 6321 and 6322; and

Count III - seeking foreclosure against tax liens on and a judicial sale of the Oak Park property

The government seeks summary judgment on all counts, arguing that there is no genuine issue of material fact that (1) Miller owes the unpaid taxes and they are properly and timely assessed, (2) Miller owns the Oak Park property and therefore the government can enforce its tax liens and foreclose.

Miller says (1) he is not liable for the entire assessed amount of unpaid taxes , (2) the statute of limitations bars the government's collection efforts, and (3) he does not own the Oak Park property.

---

[3]The liability amount has increased since the Amended Complaint was filed because of interest charges.

### III.  Summary Judgment

Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Fed. R. Civ. P. 56(c).

To defeat summary judgment, the nonmoving party must show "sufficient evidence to create a genuine issue of material fact."  McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  He "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  Id. (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 257 (1986).  A mere scintilla of evidence is insufficient, because there must be evidence on which the jury could reasonably find for the [nonmovant].  Id. (quoting Liberty Lobby, 477 U.S. at 252) (internal quotation marks omitted).

### IV.  Analysis

To survive summary judgment, Miller must establish that a genuine issue of material fact exists as to whether (1) the government has properly and timely assessed his tax liability, and (2) he has an ownership interest in the Oak Park property.

#### A.  Count I:  Miller's Tax Liability

The government says it is entitled to a judgment in the amount of $235,332.72.  The issues are whether the tax has been accurately assessed and whether the statute of limitations for collection has expired.  Each will be addressed in turn.

1. Tax Assessments Are Presumed Accurate

The government says that the IRS federal tax assessments are accurate. In support, it relies on Miller's federal income tax returns and the affidavit of IRS agent Melissa Echols. The Court of Appeals for the Sixth Circuit has held that federal tax assessments are "presumed to be correct" and that a taxpayer may rebut the tax assessment by proving "by a preponderance of evidence that the evidence is incorrect." See Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986) ("When a party pays part of the penalty existing for failure to pay withheld taxes and the government counterclaims for the remainder of the refund, the taxpayer has the burden of proving that the assessment was wrong. The assessment is presumed to be correct."); see also Boggs v. C.I.R., 569 F.3d 235, 237 (6th Cir. 2009) ("A [federal tax] deficiency determination is presumed correct, and the taxpayer has the burden of proof to demonstrate error.").

Here, Miller has not presented any evidence to rebut the tax assessment accuracy. Rather, Miller argues that he should be liable only for the principal tax amount, which according to Miller "is about 30,000 or 40,000," and not the interest or penalties.[4] He does not present any authority to support this argument. Miller also says that the IRS agent "took illegal, or at least improper, action" that was "contrary to agreements in effect at the time." However, he has no evidence to support this allegation. Miller has therefore not overcome the presumption that the assessments are accurate.

---

[4]The actual principle amount per the government's assessment tables on record is $39,725. See Pl.'s Mot. for Summ. J. at 3-5.

2. The Collection Action is Timely

Miller argues that the government is time barred from collecting any unpaid tax liability from years 1984 and 1985. The government says that the action is timely because Miller's offer in compromise extended the limitations period.

The government generally has ten (10) years after a tax assessment to collect a tax by levy or by a court proceeding. 26 U.S.C. § 6502(a). However, the statute of limitations on collection of a federal tax is suspended for any period that the IRS is prohibited from levying due to a pending offer in compromise. See § 6331(k)(3)(B) and (i)(5). The IRS is prohibited from levying during the period that an offer in compromise is pending with the IRS, during the thirty days after rejection of an offer, or during a timely filed appeal of the rejection decision. 26 U.S.C. § 6331(k). An offer in compromise becomes pending when it is accepted for processing by the IRS. § 6331(k)(1).

Here, the IRS assessed Miller's 1984 and 1985 taxes – the years that Miller claims were uncollectible as outside of the statute of limitations – on December 9, 1996 and September 23, 1996, respectively. Under the ten year limitations period for collection then, the government had until December 9, 2006, and September 23, 2006, respectively, to collect the taxes.

However, Miller's January 25, 2000 offer in compromise for years including 1984 and 1985 suspended the limitation period, resulting in an extension of the collection deadline. Specifically, the collection period was suspended beginning January 25, 2000 until December 21, 2000, when the suspension provision was mistakenly removed by

Congress.[5] Thus, the government's collection deadline was extended by 331 days, until November 5, 2007, for Miller's 1984 taxes and until August 20, 2007, for his 1985 taxes. The government filed the instant action on April 17, 2007, before both of the extended deadlines. Thus, the action as it relates to years 1984 and 1985 – the contested years – is timely.

Overall, the government is entitled to summary judgment on Count I of the complaint.

### B. Counts II and III: The Oak Park Property

#### 1. Miller's Interest

The government says that Miller has an interest in the Oak Park property and therefore it is entitled to enforce its liens and foreclose. The government points to handwritten notes on the top of the deed issued to Ruth Miller, which suggests that two were issued, one to Miller and one to Ruth Miller. Although the government has been unsuccessful in obtaining a deed in Miller's name, it say that it is entitled to an adverse inference of its existence – and thus, Miller's ownership rights – because he did not respond to production requests for the document and because in his deposition he stated that he did not "remember anything about the deeds at all."

Miller says that he does not have an ownership interest in the property because his interest ended when the land contract expired and because he is not listed on the deed.

---

[5]Under section 6331(k), the government's collection period would normally have been suspended until Miller's offer in compromise was rejected, on March 23, 2001. However, because the Community Renewal Tax Relief Act of 2000 mistakenly removed the suspension provision, Miller's suspension period ended on December 21, 2000.

The question of whether a taxpayer has an interest in property to which federal tax liens can attached must be answered by applicable state law. Aquilino v. United States, 363 U.S. 509 (1960); Fognini v. Hughes, 1993 WL 126410, at *2 (E.D. Mich. 1993). Under Michigan law, "a deed conveying a present interest in land must be delivered and accepted." Warson v. Warson, 2009 WL 1564535, at *2 (Mich. App. June 2, 2009) (citing Gibson v. Dymon, 281 Mich. 137, 141; 274 NW 739 (1937)). "The purpose of the delivery requirement is to show the grantor's intent to convey the property described in the deed." In re Bonzelaar, 2006 WL 2548625, at *2 (W.D.Mich. Sep. 1, 2006) (citing Energentics, Ltd. v. Whitmill, 497 N.W.2d 497, 505, 442 Mich. 38, 53 (1993)). Physical delivery to the grantee, or physical possession by the grantee, raises a presumption of intent to pass title. Warson, 2009 WL 156410 at *2 (citing Resh v. Fox, 365 Mich. 288, 291-292; 112 N.W.2d 486 (1961)). "[Y]et a presumption is but a rule of procedure used to supply the want of facts. Its only effect is to cast the burden on the opposite party of going forward with the proof." Id.

Michigan property law requires a delivered and accepted deed to create a property right. Warson, 2009 WL 156410 at *2. Here, the only deed is issued to Ruth Miller. However, there are handwritten notes on the top of the deed to Ruth Miller which indicate that a second deed was delivered to Miller. Although Miller says that the handwritten notes are inadmissible hearsay, they are admissible. An exception to the hearsay rule states, "[a] statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document." Fed. R.

9

Evid. 803(15) (emphasis added).

Here, the record shows that Miller has an interest in the Oak Park property and not Ruth Miller.  In 1987, Miller entered a land contract to purchase the Oak Park property with Fox.  Miller has lived at the Oak Park property and paid the costs of ownership more or less continuously ever since.  When he failed to make payments, Fox sued him under the land contract.  In 2000, Fox and Miller settled.  The settlement involved a payment by Miller to Fox in exchange for deed to the Oak Park property.  No deed has been recorded.  At deposition, Miller testified that he did not rent or lease the Oak Park property.  The property taxes are in his name and Miller paid the Oakland County Treasurer to redeem the Oak Park property.  While Miller says he cannot recall the details of the closing with Fox or whether there were two deeds issued on the Oak Park property, his vague recollections are not evidence.  All of the dealings with the Oak Park property are inconsistent with Ruth Miller having an interest in the Oak Park property.  Thus, the handwritten notes are admissible.  Based on the record, including the handwritten notes, Miller has an interest in the Oak Park property.

Moreover, the government says it is entitled to an adverse inference on the fact that Miller possesses, but has failed to deliver, a deed that establishes his property right in the Oak Park property.  In support, the government notes that Miller did not respond to production requests for the deed and testified at deposition that he does not "remember anything about the deeds at all."[6]  The Court agrees.

---

[6]In an attempt to focus Miller's position, the Court directed him at the hearing to respond within ten days to the government's statement of material facts in dispute, particularly ¶¶ 20-25.  Miller's response, in which he again says he does not recall whether two deeds were issued and alleges he was a mere "conduit for the funds of the

The general rule governing adverse inferences states, "[w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." Clay v. United Parcels Service, Inc., 501 F.3d 695, 712 (6th Cir. 2007) (citing McMahan & Co. v. Po Folks,Inc., 206 F.3d 627, 632-33 (6th Cir. 2000)). The adverse inference rule allows relevant information "in the possession" of a party, and not provided, to be inferred against the party failing to provide it. Clay, 501 F.3d at 712 (emphasis added).

Here, in light of the handwritten notes which indicate two deeds were to have issued, and Miller's conduct in simply failing to recall the details and not recording any deed, the government is entitled to an adverse inference that a deed to Miller does exist, the whereabouts are known only to Miller.

2.  Ruth Miller's Interest

While the Court has found Miller has an interest in the Oak Park property, it will address the government's alternative arguments regarding Ruth Miller. That is, assuming Ruth Miller, not Miller, owns the Oak Park property, the government is still is entitled to enforce its liens and foreclose.

First, the government says that even if Miller does not hold title to the Oak Park property, the liens against it should be enforced and the government should be able to foreclose because Ruth Miller holds title as the nominee of Miller. There are six factors

---

purchaser [Ruth Miller], is illustrative of his failure to be forthcoming in this litigation. Miller also says he will "supplement" his answers shortly. However, the record is sufficiently complete; no further response is necessary.

11

a court considers when determining whether property is held by a nominee:

> (1) whether inadequate or no consideration was paid by the nominee;
> (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
> (3) whether there is a close relationship between the nominee and the transferor;
> (4) whether they failed to record the conveyance;
> (5) whether the transferor retains possession; and
> (6) whether the transferor continues to enjoy the benefits of the transferred property.

Porta-John of America v. United States, 4 F. Supp. 2d 688, 700 (E.D. Mich. 1998); see also United States. v. DeTar, 2009 WL 2252822, at *5 (W.D. Mich. Jul. 28, 2009) (adopting the federal Porta-John six factor test because, although state law governs a taxpayer's property rights, there is no known Michigan law discussing nominee theory).

As the government points out, Miller's device of obtaining a warranty deed to the Oak Park property in his mother's name is a paradigm example of "legal machination" that the nominee theory was designed to cut through. Miller entered a land contract to purchase the Oak Park property in 1987. He used it as his personal residence and made payments for eight years under the land contract. The land contract culminated in an agreement for Miller to pay $22,000.00 in exchange for a warranty deed to him. At the time of the closing, Miller, as indicated above, owed substantial income tax liabilities to the IRS and had federal tax lien notices filed against him. He chose to receive a deed in his mother's name and apparently another one in his name. He failed to record either. In substance, title passed to Miller as provided in the settlement agreement and only nominally to Ruth Miller. Miller's relationship to the Oak Park property remained the same after the closing. He has continued to live there and pay the costs of ownership, albeit with apparent help from others. Under these circumstances, to the

extent Ruth Miller took title, it was only nominally for Miller.

The government also argues that even if Ruth Miller's title is deemed valid, it is still entitled to enforce its tax liens against the Oak Park property because she took title subject to them when she purchased the property. The Court agrees. "Michigan recognizes a vendee's equitable interest under a land contract for the purchase of real property as an interest to which a federal tax lien may attach." Cardinal v. U.S., 26 F.3d 48 (6th Cir. 1984) (citing Vereyken v. Annie's Place, Inc., 964 F.2d 593, 594 (6th Cir.1992)). "Under Michigan law, a vendee under a land contract takes equitable title to the land, while the vendor holds legal title and an equitable lien on the land in the amount of the unpaid purchase price." Id. (citing Barker v. Klingler, 302 Mich. 282, 4 N.W.2d 596, 599 (1942)). "The tax lien attaches to whatever equity interest the taxpayer has in the property." Id.

Here, Miller had rights in the Oak Park property as of October 6, 2000 in the form of his interest under the land contract, which was effectively all equitable title to the Oak Park property and the right to legal title upon payment of $15,000.00. As of October 6, 2000, the IRS had valid federal tax liens on Miller's property. Even if Ruth Miller owns the Oak Park property, she took title subject to the liens and the government is entitled to enforce them and foreclose.

The government is therefore entitled to summary judgment on Counts II and III.

VI.

For all the reasons stated above, the government's motion for summary judgment is GRANTED.

The government shall within ten (10) days, and on notice to Miller, submit a proposed form of judgment.

SO ORDERED.

Dated: October 15, 2009          s/ Avern Cohn  
                                        AVERN COHN  
                                        UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Darryl R. Miller, P.O. Box 37094, Oak Park, MI 48237-0094 on this date, October 15, 2009, by electronic and/or ordinary mail.

                                                            s/Julie Owens  
                                                            Case Manager, (313) 234-5160